FILED
2016 Mar-31  AM 10:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| LISA ABBOTT MURPHREE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  4:14-cv-02483-SGC |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The plaintiff, Lisa Abbott Murphree, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and Disability Insurance Benefits.   Ms. Murphree timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).   The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  (Doc. 9).   For the reasons that follow, the decision of the Commissioner will be affirmed.

## I.      FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Ms. Murphree was born in 1962 and has a greater than high school education.  (R. 171, 178).  Her past work experience includes employment as a telemarketer, dispatcher, clerk, and office manager.  (Doc. 12 at 5).  Ms. Murphree claims she became unable to work on February 1, 2012, due to back problems.  (*Id.*; R. 171).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920;

*Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is performing "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in substantial gainful activity, he or she is not disabled and the evaluation stops.  *Id*.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairments fall within this category, the claimant will be found disabled without further consideration.  *Id.*  If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, he or she is not disabled and the evaluation stops.  *Id.*  If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience to determine whether he or she can perform other work.

*Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, he or she is not disabled.  *Id.*

Here, applying the sequential evaluation process, the Administrative Law Judge ("ALJ") found Ms. Murphree had not engaged in substantial gainful activity since the alleged onset of her disability.  (R. 15).  At step two, the ALJ found Ms. Murphree suffered from the following severe impairments: (1) obesity; (2) minimal osteoarthritis of the cervical spine; (3) moderate degenerative arthritis of the thoracic spine; (4) left trochanteric bursitis; (5) bilateral degenerative joint disease of the knees; and (6) impairments of the lumbar spine.  (R. 15).  Regarding lumbar spine impairments, the ALJ found Ms. Murphree suffered from: (1) severe scoliosis with approximately 60 degrees convexity towards the right; (2) moderate-to-severe narrowing of the intravertebral spaces throughout; (3) severe degenerative arthritis; (4) posterior spinal canal stenosis at L-3 through L-5 secondary to facet and ligamentum flavum changes without nerve root compression; and (5) reactive bone marrow changes in the endplates at multiple levels.  (R. 15).  The ALJ further found Ms. Murphree suffered from an anxiety disorder, which she testified was the result of her chronic pain and manifested via heart palpitations, trembling, and nervousness.  (R. 15).  After noting that Ms. Murphree did not seek any treatment for her anxiety, the ALJ considered the four broad functional categories set out in the disability regulations pertaining to mental disorders.  The ALJ concluded that, because Ms. Murphree's anxiety disorder caused no more than minimal limitation in her ability to work, it was non-severe.  (R. 15-17).

At step three, the ALJ found Ms. Murphree did not have an impairment or combination of impairments meeting or medically equal to any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 17).  In reaching this conclusion, the ALJ noted that no treating

physician or state agency reviewer, consultant, or examiner had concluded Ms. Murphree suffered from a listed impairment. (*Id.*). The ALJ also noted that he had considered the combined effects of all of Ms. Murphree's severe and non-severe impairments. (*Id.*). Before proceeding to step four, the ALJ determined Ms. Murphree retained the RFC to perform light work with postural and environmental limitations. (R. 17-21). In reaching this conclusion, the ALJ considered Ms. Murphree's symptoms, the medical record, opinion evidence, and her conduct during the hearing. (*Id.*). Regarding Ms. Murphree's symptoms, the ALJ found the claimant's medically determinable impairments could reasonably be expected to cause the symptoms alleged but found her testimony regarding the intensity, persistence, and limiting effects of her symptoms to be less than entirely credible. (R. 18).

At step four, the ALJ determined Ms. Murphree was able to perform her past relevant work as a telemarketer, clerk, office manager, and dispatcher. (R. 21). Accordingly, the ALJ found Ms. Murphree was not disabled at any time through the date of decision. (*Id.*). Because of this conclusion, the ALJ did not proceed to step five of the sequential analysis. This decision became the final decision of the Commissioner when the Appeals Counsel denied Ms. Murphree's request for review.

Ms. Murphree appealed to this court on December 29, 2014 (Doc. 1), and subsequently filed a brief in support of her appeal (Doc. 12). The Commissioner responded (Doc. 14), and all deadlines for submitting briefs have passed. Accordingly, this matter is ripe for adjudication.

## II.    STANDARD OF REVIEW

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A

district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.   DISCUSSION

On appeal, Ms. Murphree argues the ALJ erred in determining her RFC. Specifically, Ms. Murphree contends the ALJ's RFC findings: (1) are not based on substantial evidence to the extent they allow for semi-skilled and skilled work; (2) do not properly account for obesity; and (3) are inconsistent with the weight of evidence, absent further development of the record. (Doc. 12 at 2-3). Each argument is addressed in turn.

A.    <u>RFC For Skilled and Semi-Skilled Work</u>

Ms. Murphree's principal argument regarding her ability to perform skilled and semi-skilled work rests upon her contention that the ALJ did not consider the impact of the anxiety disorder on her RFC.  (Doc. 12 at 6-11).  Ms. Murphree contends that, while the ALJ did address her physical impairments, he did not consider the additional impact of anxiety in determining her capacity to work.  (*Id.*).  In particular, Ms. Murphree asserts the ALJ failed to analyze how anxiety would have affected her ability to perform semi-skilled and skilled work, particularly her ability to understand, remember, and carry out instructions, as well as her ability to concentrate. (*Id.* at 8-10).

"[W]here a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a [Psychiatric Review Technique Form ("PRTF")] and append it to the decision, or incorporate its mode of analysis into his findings and conclusions."  *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005); 20 C.F.R. § 404.1520a(e)(2).  The PRTF requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Moore,* 405 F.3d at 1213; *see* 20 C.F.R. § 404.1520a(c)(3–4).

Here, the ALJ noted Ms. Murphree's testimony that she suffered from an anxiety disorder as a result of her chronic pain.  (R. 15).  The ALJ further noted that, despite Ms. Murphree's testimony that her anxiety disorder caused her to experience trembling, heart palpitations, and nervousness, she did not seek treatment or take medication for anxiety.  (*Id.*).  Accordingly, the ALJ concluded Ms. Murphree's anxiety disorder caused no more than minimal limitation in her ability to perform basic mental work activities.  (R. 16).  In reaching this conclusion, the ALJ

6

found the record supported findings of: (1) mild limitation in activities of daily living; (2) no limitation in social functioning; (3) mild limitation in concentration, persistence, or pace; and (4) no episodes of decompensation. (*Id.*). Accordingly, the ALJ found Ms. Murphree's anxiety was non-severe. (R. 16) (citing 20 C.F.R. § 404.1520a(d)(1)). Finally, the ALJ noted that Ms. Murphree's RFC, which followed, incorporated the PRTF criteria described above. (R. 17).

On appeal, Ms. Murphree does not contend the ALJ erred in assessing her mental impairments or functioning. Instead, Ms. Murphree argues the ALJ did not incorporate her anxiety-related functional limitations into her RFC. (Doc. 12 at 6-11). As an initial matter, the ALJ did account for Ms. Murphree's anxiety-related symptoms and limitations in determining her RFC. (R. 20) (discussing Ms. Murphree's mild limitations in activities of daily living and concentration, persistence, or pace). Additionally, the ALJ did not err in concluding that Ms. Murphree's failure to pursue any treatment indicated that anxiety caused, at worst, minimal limitation in her ability to perform basic mental work activities. *See Dyer v. Barnhart*, 395 F. 3d 1206, 1211 (11th Cir. 2005) (ALJ properly discredited claimant's testimony of pain where record showed lack of "routine or consistent treatment"); *Dickerson v. Soc. Sec. Admin., Comm'r*, No. 12-0842, 2012 WL 6043227 *5 (N.D. Ala. Nov. 29, 2012) ("An ALJ may consider not only objective medical evidence, but also other evidence such as failure to seek treatment . . .").

In addition to performing the PRTF and concluding Ms. Murphree's anxiety disorder was non-severe, the ALJ noted that he "considered the combination of the claimant's severe and nonsevere impairments" in determining she did not satisfy the listings. (R. 17). The ALJ further noted that, to the extent Ms. Murphree's cumulative impairments caused limitations, they were "reflected in the residual functional capacity," which followed. (*Id.*). The Eleventh Circuit has held that a statement by the ALJ that he considered the impairments in combination is sufficient

to show that the ALJ considered the combined effect of plaintiff's impairments. *See Jones v. Dep't. of Health & Human Servs.,* 941 F.2d 1529, 1533 (11th Cir. 1991) (noting that the statement that the claimant does not have "an impairment *or combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4" indicated that the ALJ considered the combined effect of appellant's impairments); *see also Wilson v. Barnhart,* 284 F.3d 1219, 1224–25 (11th Cir. 2002) (holding that an ALJ's statement that the claimant "did not have an impairment *or combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4 ... constitute [d] evidence that [the ALJ] considered the combined effects of [the claimant's] impairments") (emphasis in originals).

For the foregoing reasons, the ALJ properly evaluated the impact of Ms. Murphree's anxiety disorder upon her RFC.

### B.   <u>Obesity</u>

Ms. Murphree contends the ALJ failed to properly account for the impact of obesity when determining her RFC.  (Doc. 12 at 11-13).  Ms. Murphree argues the ALJ completely ignored her obesity in making the RFC findings and failed to mention the applicable Social Security Ruling ("SSR").  (Doc. 12 at 12).  Ms. Murphree also contends the ALJ's RFC assessment did not include alternatives for sitting versus standing, as required by the relevant SSR.  (Doc. 12 at 12).[1]

SSR 02–1p recognizes that obesity can cause further degradation of a claimant's physical impairments and instructs the ALJ to assess the effect of a claimant's obesity on her ability to perform exertional, postural, and social functions. *See* SSR 02–1p, 2002 WL 34686281, at *3.

---

[1] Ms. Murphree also complains that the Vocational Expert who testified at the evidentiary hearing was "confused by the ALJ's exertional assessments and could only answer the hypothetical outside of the context of sedentary work when redirected to the totals given by the ALJ . . ." (Doc. 12 at 13). Ms. Murphree's brief appears to take issue with the total hours spent sitting, standing, and walking in the hypotheticals posed by the ALJ.  However, the thrust of Ms. Murphree's argument is unclear.

However, even a diagnosis of obesity is insufficient to prove functional limitations.  *See Moore*, 405 F.3d at 1213 n.6 ("mere existence of [] impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in this regard"); *Davis v. Colvin*, No. 12-3314, 2013 WL 1909423, at *2-3 (N.D. Ala. May 7, 2013).  Instead, the regulations specify the Commissioner "will not make assumptions about the severity or functional effects of obesity when combined with other impairments."  SSR 02-1p, 2002 WL 34686821, at *6.

Here, in finding that none of Ms. Murphree's impairments met or medically equaled a listed impairment, the ALJ stated that he "considered the combination of the claimant's severe and nonsevere impairments including her obesity." (R. 17).  The ALJ further noted that to the extent Ms. Murphree's combined impairments—including obesity—caused "limitation, it is reflected in the residual functional capacity assessment." (R. 17).   As noted earlier, an ALJ's statement that a claimant's combined impairments have been considered is sufficient to satisfy the applicable standard.  *See Jones,* 941 F.2d at 1533; *see Wilson,* 284 F.3d at 1224–25.  Additionally, Ms. Murphree's RFC for light work includes exertional limitations of never climbing ladders, ropes, or scaffolds, never crawling, and occasionally balancing, stooping, kneeling, and crouching.  (R. 17).   The undersigned has not found, and Ms. Murphree does not point to, any evidence of record indicating that obesity caused limitations beyond those reflected in the RFC.   More importantly, the ALJ's RFC is supported by substantial evidence.  Accordingly, the ALJ did not err with regard to determining the impact of Ms. Murphree's obesity.

## C.    The Weight of Evidence

Ms. Murphree next contends the RFC finding is inconsistent with the weight of the evidence.  (Doc. 12 at 13-17).  In particular, Ms. Murphree states the ALJ failed to make any

findings regarding disc desiccation, bulge, and compromise of the right neural foramen at L5-SI. (*Id.* at 14).   Ms. Murphree also disagrees with the ALJ's characterization of medical evidence regarding nerve root compression at L5-S1.   (*Id.*).   In particular, Dr. Morgan Eiland interpreted a spinal MRI and opined there was some compromise of the right neural foramen at L5-S1 without definite nerve root compression.   (R. 301).   Ms. Murphree takes issue with the ALJ's translation of Dr. Eiland's findings as stating there was "no evidence of compression."   (Doc. 12 at 14) (citing R. 20).   Ms. Murphree also notes that Dr. Hasmukhn Jariwala, a consultative examiner, did not provide a medical source opinion ("MSO") and did not assess her ability to engage in exertional or postural activities function by function.   (Doc. 12 at 16). According to Ms. Murphree, this—combined with her serious impairments—created a conflict in the record, which the ALJ should have addressed, either by contacting Dr. Jariwala for an MSO, or by utilizing a medical expert, pursuant to 20 CFR § 404.1529(b).  (Doc. 12 at 16-17).

Here, to the extent Ms. Murphree takes issue with the ALJ's characterization of Dr. Eiland's impression of her MRI, the undersigned cannot discern the significance of the distinction she attempts to draw.   Dr. Eiland's impression was that Ms. Murphree suffered "[s]ome compromise of the right neural foramen at L5-S1 without definite nerve root compression."  (R. 301).  This is consistent with the ALJ's finding that "Dr. Eiland  . . . opined there is no evidence of compression."  (R. 20).  To the extent Ms. Murphree takes issue with the ALJ's omission of the word "definite," the ALJ's interpretation is consistent with the previous page of Dr. Eiland's report, which notes "no nerve root compression is identified" at L5-S1.  (R. 300).  Any distinction between the ALJ's rendition of Dr. Eiland's impression is inconsequential.

Finally, to the extent Ms. Murphree contends the ALJ should have recontacted Dr. Jariwala to request an MSO or, alternatively, utilized a medical expert, this argument fails

because the record contained sufficient evidence for the ALJ to make an informed decision. ALJs are required to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  However, an ALJ is not required to obtain a consultative examination or medical expert testimony when the record contains sufficient evidence to make an informed decision. *Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999); *Castle v. Colvin,* 557 F. App'x 849, 853 (11th Cir. 2014) (quoting *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1269 (11th Cir. 2007)).  "While the Social Security Regulations allow for clarification, they do not require it." *Purnell v. Colvin*, No. 13-1954-RDP, 2015 WL 1418918, at *11-12 (N.D. Ala. Mar. 27, 2015). An ALJ's decision regarding whether to recontact a medical source is entirely discretionary. *See* C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1) ("We may recontact your . . . medical source"); *Purnell v. Colvin*, 2015 WL 1418918, at *12.

Here, the ALJ did not abuse his discretion in declining to recontact Dr. Jariwala or seek the advice of a medical expert because the record contained evidence sufficient to support an informed decision.  Although not accompanied by an MSO, Dr. Jariwala's consultative examination revealed Ms. Murphree: (1) ambulated without difficulty or assistive device; (2) had minimal difficulty getting on and off the examination table due to back pain; (3) was able to walk heel-to-toe with minimal difficulty; (4) was able to squat and arise without assistance; (5) had normal gait and coordination; and (6) had normal range of motion in her knees, hips, and cervical spine.  (R. 284-286).  While Dr. Jariwala opined that Ms. Murphree suffered from a moderate to severe lumbosacral impairment, the ALJ concluded these findings did not demonstrate debilitating abnormalities interfering with her ability to work.  (R. 19).  Substantial evidence supports this conclusion.

Indeed, the ALJ relied on a variety of evidence to support his RFC findings.  First, the ALJ's decision relies on treatment records from Cooper Green Mercy Hospital indicating: (1) Ms. Murphree's pain was "relatively controlled" by pain medication; (2) full strength in her lower extremities;(3) full range of motion in her cervical spine with mild pain; and (4) negative straight leg raise testing.  (R. 19) (citing R. 252, 260, 271, 273, 275, 277).  The ALJ noted that these records also demonstrated Ms. Murphree was able to engage in a "variety of daily activities," despite her severe scoliosis and degenerative joint disease of the spine.  (R. 19).  The ALJ also noted that imaging of Ms. Murphree's knees revealed normal bone and joint structures, which he described as a non-acute pathology.  (*Id.*) (citing R. 276, 282).

After reviewing Dr. Jariwala's consultative examination report, the ALJ also discussed his observations of Ms. Murphree during the hearing.  In particular, the ALJ noted that Ms. Murphree "sat through the hearing and testified about her impairments without exhibiting any sign of pain or discomfort."  (R. 20).  Accordingly, the ALJ found that the medical record did not support Ms. Murphree's allegations regarding the severity of her functional impairment.  (*Id.*).

Turning to medical opinion evidence, the ALJ noted Dr. Jariwala did not identify any serious difficulty ambulating, getting on and off the examination table, or walking heel-to-toe.  The ALJ gave substantial weight to Dr. Jariwala's opinion.  (R. 20).  Additionally, the ALJ gave significant weight to Dr. Eiland's opinion that there was no evidence of spinal compression.  (*Id.*).  The ALJ noted that both opinions were consistent with the medical evidence.  (*Id.*).  The ALJ also considered the opinion of Mr. Fallon Cone, a single decision maker who opined Ms. Murphree could work at the light exertional level with postural and environmental limitations.

(*Id.*) (citing R. 67-69).  Because Mr. Cone was not a medical professional, the ALJ gave little weight to this opinion, despite its consistency with the RFC determination.  (R. 20).[2]

Finally, the ALJ addressed the Third Party Function Report completed by Ms. Murphree's husband.  (R. 21).  While Mr. Murphree reported more severe limitations, the ALJ noted that it was inconsistent with the objective medical evidence and Dr. Jariwala's findings. Accordingly, noting that the report appeared to be based on Ms. Murphree's subjective complaints, the ALJ afforded it "some weight."  (*Id.*).

As the foregoing discussion reveals, the record contained sufficient evidence to allow the ALJ to make an informed decision.  Under these circumstances, the ALJ was not required to recontact Dr. Jariwala or utilize a medical expert.  Moreover, the ALJ applied the correct legal standards and his decision is supported by substantial evidence.

## IV.    CONCLUSION

Upon review of the administrative record, and considering all of Ms. Lewis's arguments, the court finds the Commissioner's decision is supported by substantial evidence and in accord with applicable law.  Accordingly, the Commissioner's decision is due to be affirmed.

A separate order will be entered.

**DONE** this 31st day of March, 2016.

*Staci G. Cornelius*

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE

---

[2] The ALJ also addressed the opinion evidence regarding Ms. Murphree's mental impairments, as previously discussed in Section III. A., *supra*.  (R. 20).